Good morning. Good morning. On our docket is P. P. v. Northwest Independent School District. Good morning. Yeah, I need to remove one Meredith Walker. It jumped and admitted Mr. Mr. lays on put Thank you. Not on this case. No. Sometimes when you're admitting I'm at a jump and as I'm clicking and hit the person. What about Miss Walker. She's coming now. Good morning. Morning. Good morning. Are you ready. I am. Good morning. My name is Sonia Kerr and I represent appellant P.P. who is the student in this case. We are here requesting the court to affirm the district court in part and to reverse the district court in part. At the time of the underlying administrative hearing P.P. was in sixth grade. Yet she was counting on her fingers to do her math and she was not able to read all of her coursework. Her teachers were reading to her. How did this happen. Well, this happened because the district wrongly delayed child find or, in other words, evaluating this student for special education. Instead, she was in section 504 or RTI or dyslexia services, depending on what the school district called them at the time. That was for about three and a half years, which is contrary to this court's holdings in O.W. The other reason this happened is because the school district delayed developing an IEP for P.P. that was compliant. Even after they had evaluated her and found her I.D.E.A eligible. We are asking that this court reverse the district court in terms of its finding of no remedy for these egregious violations. As the IEP is the centerpiece of the entire special ed system. And as child find is the affirmative duty of the school districts and critical so that children can timely obtain IEPs. This court must reverse on that aspect. The court should be affirmed in the finding of a child find violation and in its finding that the 2016-2017 IEP was contrary to the I.D.E.A. The reason the court must do this is because the Supreme Court has held in Forest Grove v. T.A. that when a district fails to timely identify a student and evaluate a student and allow that student to obtain an IEP, that is an egregious situation because that's how services begin for a student. This court has repeatedly explained the importance of child find in the Krawitz and the O.W. case and the Lisa M. case. It has set forth a three-part test which the appellees do not apply in their briefs. The three-part test is, of course, looking at the triggering point. When should the district have known? In this case, the district knew this child had dyslexia in second grade. They didn't offer special education evaluation until fifth grade. That is egregious. That is unreasonable under the O.W. test. In addition, it's not just looking at the period of time. It's looking at what happened during that period of time. During the period of time when this child was in what we call generic dyslexia services in Texas, she was not making progress. She was failing state tests. She was not improving in her reading. The parent was requesting additional help of some kind, but the parent was not aware of or was not given notice about her special education rights until fifth grade. So we believe the court must consider all of these factors in looking at whether or not the district court correctly refused to provide any compensatory education for the student. When there is no IEP, as there was not here for second grade, third grade, fourth grade, and fifth grade until the very last day, the court has a duty to return the matter to the district court for reconsideration. The facts are plentiful in this case. The district court relied upon the administrative law judge's factual findings, but unfortunately drew incorrect conclusions with respect to the child fined period of time. The hearing officer said there was a child fine violation of six months or more, but the district court looked only at the 2016 and 2017 school year, and that was on reconsideration. There was no IEP compliant with the IDEA until the last day of fifth grade. So we have that period of time. And then we have the period following, which is the 2017-2018 school year. This is the difficulty the district court ran into. It didn't understand explicitly how compensatory education was to be determined. It looked at the fact that the school district had created an IEP for the student, and it believed that that IEP was the sufficient remedy. But the case law does not suggest that. Neither Draper nor Reed, which this court has cited in OW, nor other cases in other circuits like ISD 284 case, which we cite in our brief, or the Somburg case, none of those cases stand for the suggestion that just by creating an IEP, you have solved the compensatory education relief request of a student. That would be against the purpose and the intent of the IDEA, because the IDEA presumes you are to have relief if you have been denied an IEP and services for some period of time. And to suggest that simply creating an IEP would evaporate and eviscerate compensatory education in ways I cannot even begin to imagine. Because compensatory ed, as this court has said, this court adopted Draper and said compensatory ed compensates. It's something more. It's to bring the child back to the point the child would be if the child had not suffered the harm. Surely that would not be a child in sixth grade counting on her fingers and having to be read to by her teachers. So that is why we say that the compensatory education determination of the court was incorrect. It cannot be a zero order. It must be appropriate relief, and a zero order is not appropriate. Whether the school district can provide a free appropriate public education in an IEP after they've violated child find and delayed an IEP is not relevant to determining if the child receives compensatory education. The court must look at what the child lost and determine if there should be a remedy. And here there is no question. Even affilees concede there is at least some child find violation. So to award no remedy in light of that is not correct. The district may raise the issue of the statute of limitations as to the remedy. And I want to address that just briefly. With respect to the statute of limitations, Texas has a one-year filing deadline. But the question becomes, when does the deadline start? And it's the discovery rule as explained by the Ninth Circuit and the First Circuit and other circuits. It's when the parent knew. So this parent, according to affilees, received her first notice of procedural safeguards in October of 2016. She filed for hearing within that one year. The issue about the statute of limitations is the remedy. And the court should consider adopting the reasoning in the Legionnaire case. So in Legionnaire, the court explained that the statute of limitations period for filing is not limited to the period, or the compensatory ed is not limited to the period of the filing. That would not make sense. And it is consistent with this court's decision in O.W., which adopted Draper and Reed, to realize that if we have a child who's been deprived for more than one year, which we have here, that child gets a remedy that is not cut off at the knees by the statute of limitations. Because the Texas one-year provision is a filing provision. It is not a traditional statute of limitations. It could not be. Because we have federal law that says you have a two-year statute of limitations, but states are free to set a shorter period for filing. That filing period cannot be in contradiction to the federal law. And that is what the Legionnaire case decides. So we believe that the court should affirm the district court's finding that this child was denied timely child find and eligibility, affirm the district court's finding that this child was denied an appropriate IEP through 2016-2017, and reverse the district court's finding that the child received an appropriate program during 2017 and 2018, and remand this matter to the district court for a specific determination of the amount of compensatory education that should be awarded to this student. That is all I have unless the court has questions. Thank you, Ms. Kerr. You saved some time for rebuttal. Ms. Nelson? Thank you, Your Honor. May it please the court, I'm Alice K. Nelson, representing amicus, Council of Parent Attorneys and Advocates. We're here today to emphasize the importance of compensatory education to the Act's remedial scheme. As you know, the IDEA authorizes the grant of, quote, such relief as the court determines is appropriate. This statute has been read in all circuits, including this one in Spring Grove v. O.W., as including an award of compensatory education upon the denial of either child find or FAPE requirements of the Act. Indeed, as Ms. Kerr has alluded to, O.W. was a case where compensatory education was at issue for violation of child find. Child find was also at issue in the Eighth Circuit's recent opinion, again referred to by Ms. Kerr in Independent School District No. 283. The purpose of compensatory education is to provide prospective relief to remedy a past harm. This is different from whether or not a new IEP developed after a school has violated a student's right provides FAPE. As the court in District No. 273 says, to paraphrase, whether a district is able to provide a student FAPE prospectively is irrelevant to the award of compensatory education because compensatory education is backward-looking. The purpose of compensatory education is restorative. In this case, if the parent had paid for services, there would not be any question that the expenditure would be on the table. This has been the state of the law since 1985 in town of Burlington, which clearly establishes a right to reimbursement. That a parent, for whatever reason, does not place the child in the private service, compensatory education does not obviate the requirement. I mean, reimbursement does not obviate the requirement. There are many reasons that a parent might not purchase services, and as far as I am aware, none of these reasons are on record. Compensatory education may be awarded for a student who has denied child-friend. There has been an allegation made that this was denied because the parent denied services, refused services. Assuming even that that is true, there is no case law of which I am aware that there has been a waiver of the student's right to compensatory education because of an alleged refusal of services, nor has the court cited any. Thank you very much, your honors. Thank you, Ms. Nelson. Ms. Walker? Thank you. May it please the court, my name is Meredith Walker, and I'm here on behalf of Northwest Independent School District. The district court correctly denied PPE's request for compensatory educational services, but erred in holding that Northwest ISD failed to provide PPE with a free, appropriate public education or a FATE during the entirety of the 2016-2017 school year. I'm going to start where Ms. Nelson left off with respect to the issue of compensatory educational services. Those services are grounded in equity. The court's going to review the district court's denial of compensatory educational services for an abuse of discretion because of the equitable nature of those. And when you look at all of the case law reflecting compensatory educational services, including Town of Burlington, it reflects that equitable considerations are appropriate and relevant in fashioning the relief. And there is case law out there, albeit not Fifth Circuit case law, but there is case law reflecting that when a parent or student rejects services offered by a school district, that's relevant and can, in fact, essentially cut off the student's entitlement for educational services. And that's the case that we have here. If the court looks at Fouliot School District No. 3, which is at 31 F. 3rd, 1489, it's a Ninth Circuit case. And there, the district court did not abuse its discretion in denying student equitable relief in the form of compensatory educational services. Because when the district court balanced the equities, including the student's refusal to accept extra tutoring and summer school, it wasn't appropriate to award the requested remedy. And that reflects what is appropriate under the IDEA when it comes to compensatory educational services is equitable. And so when you look at what was offered here, the district offered individualized tutoring that was going to span four days a week, Monday through Thursday, when school was in session during the entirety of the 2017-2018 school year. And she was going to receive that for 30 minutes. The district also offered her access to a summer program for academic enrichment during the summer of 2018. It actually increased the offer of individualized tutoring for PP for the remainder of the 2017-18 school year and for the 2018-2019 school year to 45 minutes, four days a week with a certified teacher. And then when PP's parents said, we want to have her in a dyslexia program, the district offered to put her in a dyslexia program in the middle school. And all of those things were rejected. And yet now, PP is coming to the court, asking the court to award her a compensatory educational services. But under the equitable nature of the award, that's not appropriate here because the district offered compensatory educational services stemming from the child find violation, and the plaintiff or petitioner of PP rejected those services. And for those reasons, the court should uphold the district court's denial of compensatory educational services. Turning to the child find issue, I want to talk just a bit about the child find triggering date in this matter. It's important to note that when the special education hearing officer noted that the approval date in this matter was June 16, 2016, PP did not object to that in the underlying due process hearing. She then confirmed during the pre-hearing conference that they were limiting their child find claim to the one-year statute of limitations. And that can be found at the Record on Appeal at 2688. It was again affirmed in the pre-hearing conference that the application of the one-year statute of limitations applied. And that's at the Record on Appeal at 2696 to 2697. And so the one-year application or the one-year statute of limitations here applies with respect to the child find violation. While Northwest ISD does not believe PP is entitled to compensatory educational services, if the court disagrees, the date on which those compensatory educational services would go is from June 16, 2016, to October 21, 2016, when the district met its child find obligation. And there are a lot of dates in this case and a lot of different matters that the court has to look at in determining statute of limitations and child find. And we did a chart. It's found on pages 57 to 58 of the district's opening brief, which is on pages 70 to 71 of the district's PDF, which I believe is helpful in helping the court navigate some of these issues. So when you look at the actual child find violation, it's a finite period of time from June 2016 to October 2016. But even if the court believes PP can reach beyond the applicable one-year statute of limitations, the district court correctly determined that the district did not need to meet a child find obligation until March of 2016. And in fact, when Ms. Kerr is talking about the fact that PP had dyslexia in second, third, and fourth grade, the fact that PP had a disability is not the only issue that a court's going to look at in determining whether a student's child find obligation has been triggered. The court has to look at whether there was knowledge of a disability, but the second prong is whether there was knowledge or suspicion that the student needed special education. And here, up until March 2016, that suspicion that PP needed special education and related services simply was not there. When you look at the progress she was making during the 2013-2014 school year, she increased her reading fluency from 37 words per minute to 56 words per minute. Her DRA score went from a 12 to an 18 at the end of the school year. She was making progress. During the 2014-2015 school year, she increased her reading fluency from 53 words per minute to 64 words per minute. And she increased her DRA score from 16 to 24. That progress started to slow in March of 2016, which is when the district court noted that the district's child find obligation was triggered. So even if, again, the court believes Tamina can reach beyond the statute of limitations in this matter, that reach stops in March of 2016. When you look at the next time period that's relevant in this matter, it's the district's finding or complying with its child find obligation on October 21, 2016, when it received consent to perform Kiki's initial full and individual evaluation. While we absolutely recognize that there are three dates the court looks at in a child find violation, the third factor is just not relevant here. The first is the date the child find requirement was triggered, which the district court correctly found was March 2016. The second is the date the child find duty was ultimately satisfied, and that was on October 21, 2016. And the third is the reasonableness between the delay. That third factor is not before the court because the district is not appealing the child find violation. So when we go and look at the date between October 21, 2016 and February 1, 2017, the court's decision in Woody is instructive. While it's not entirely on point because it dealt with reimbursement or private placement, the concept behind the reasoning is still valid and applicable here. There, this court held that a school district is entitled to follow the IDEA's procedures, and absent a finding that it violated some obligation, reimbursement may be calculated only from the date the district should have provided faith under the act. In other words, to the extent that PP is entitled to compensatory educational services, those services don't attach during the time frame the school district had to evaluate PP. And that time frame went from October 21, 2016, when it received consent, until January 17, 2017, when it completed PP's FIE. It then held PP's ARC Committee meeting on February 1, 2017. There are no allegations in this matter that the district did not comply with its timelines under the IDEA. There's no evidence the district didn't comply with the relevant timelines under the IDEA. And because of that, there can be no compensatory educational services that would attach to that time period. That brings the court to PP's initial IEP, which the school district developed on February 1, 2017. The district court erred in finding that the IEP was not appropriate. This court looks to the four Michael F. factors when determining whether an IEP is appropriate. Here, the court found that two Michael F. factors weighed in favor of the district in providing PP with a free, appropriate public education. They found, or the district court found, that the IEP was administered in the least restrictive environment, and that PP demonstrated positive academic and non-academic benefit under the IEP. The district court, however, found the IEP inappropriate because it was not individualized on the basis of the assessment and performance, and the services weren't provided in a coordinated and collaborative manner. The latter finding is absolutely erroneous and not supported by the record on appeal. The district court described the extensive cooperation and collaboration between Northwest ISD and PP's parents on the record on appeal at 415 to 416. After describing the collaboration and cooperation in implementing PP's IEP, the court makes an abrupt right turn and says that while the final IEP considered and implemented PP's parents' concerns and feedback, the February 2017 IEP did not take into account PP's independent educational evaluation. The district could not have taken into consideration PP's IEE in formulating her initial IEP because the IEE was not in existence at that time. So the court hung its hat on the third Michael F. factor on a fact that's not supported by the record on appeal. That brings the court to the first Michael F. factor, which is whether PP's IEP was individualized on the basis of her assessment and performance. Importantly, the district court found that PP made academic progress and received academic benefit and non-academic benefit under her IEP, and this court has previously held that when a student makes academic progress, receives academic benefit, that an IEP provides that student with a fate even if it wasn't individualized. But here the court doesn't even have to get there because PP's IEP was individualized. Her needs in math were met, she had math accommodations, and while there was no math goal, those math accommodations were in place to support her. In fact, she passed the 2017 STAAR for fifth grade, which is the state of Texas' standardized test in math, and it showed that she made the expected growth as measured by the STAAR in math from fourth grade to fifth grade. That's exactly what a school district wants to see. The same holds true for reading, that PP's reading comprehension, which was the issue she needed help with, was being addressed. And when you look at it, she had goals to address her reading comprehension, and she was making progress in her reading skills, and she was maintaining passing grades in her classes. And with respect to the commentary that PP's teachers were reading everything for her, the record on a pill doesn't show that. What it shows is that PP's scores on the DRA were not the product of anything other than her own effort. While her teachers would read the DRA questions to her, the evidence in the record on the pill shows that PP was reading the text of the DRA, and that text is what she was using to answer the questions. In other words, she was making progress on her DRA, which is an assessment tool that the district uses to measure a student's reading, and she was showing reading comprehension because she was actually reading the DRA and then answering those questions. And so for those reasons, and when you look at the progress that PP was making that the district court found, the district court erred in finding that PP's February 2017 IEP was not appropriate. The district court, however, correctly determined that PP's May 2017 IEP was appropriate. And the reason for that is that PP's services were coordinated and collaborative. There can be no argument to the contrary. Her IEP was administered in a least restrictive environment. There can be no argument to the contrary. And it was absolutely individualized on the basis of her assessment and performance. And that first factor was buttressed by the academic progress that PP was demonstrating in sixth grade. She was earning A's and B's during her sixth grade year. She was mastering grade-level content, as evidenced by her passing her CEAs, which are curriculum-based assessments, again, another tool the school district uses to evaluate a student's progress. She was performing in the top half of her classes for English language arts, math, and science. She was reading and comprehending sixth-grade material. She was reading and comprehending sixth-grade-level math assignments. She was using her reading strategies on a consistent basis. And those reading strategies were helping her improve her reading comprehension. And then there was a discussion at her January 2018 art committee meeting showing that she had mastered her goals and objectives in her annual IEP. So PP's May 2017 IEP absolutely provided her with a free, appropriate public education. And the district court did not err in finding, in holding that to be the case. So for those reasons, as well as the reasons we have briefed, the district is asking the court to affirm the district court's denial of PP's request for compensatory educational services and affirm the district court's determination that PP's May 2017 IEP complied with the IDA and provided PP with the pay. Northwest ISD also asks that the court reverse the district court's finding that the February 2017 IEP did not provide PP with the pay. Thank you. Are you rebuttal? Yes, thank you. First, to respond quickly to the school district's suggestion about the statute of limitations, in pleadings before the administrative hearing officer, PP preserved this issue of relief as opposed to the one-year statute of limitations filing. And that is in a pleading that is at Record on Appeal 1000-1001, in which the petitioner at that time states that they are still intending to assert evidence on the issue of the student's issue of relief and citing to the Legionnaire case, which is the basis for the child fine compensatory education and statute of limitations argument. With respect to the school district's claim that the student's parents rejected or declined services, that is a misunderstanding and misreading of the record. The record at 1603, which is the note from the IEP meeting in May of 2017, when people go to these meetings, the school district writes notes. And in these notes, which are called deliberations, it states that the parents also requested that she be placed back into the dyslexia class using the LIPS, L-I-P-S program, which is a program recommended by the independent evaluator. The committee discussed that the dyslexia program is established by the district, and the committee asked if they wanted to have the child go back into the program she had been in and had not made progress in, which was why she was in special ed. And the parents said they wanted, quote, an effective—they wanted an appropriate program. They did not want the same program. And they also, according to the district, specifically requested compensatory services. That, again, is at Record on Appeal 1603. In addition, the parents' request about the dyslexia services is important because these generic dyslexia services are not the same as carefully tailored, individualized, specially designed instruction. And this court addressed that in the Culper's Cove case. And that's what, really, this allegation about declining is about. I also wanted to mention that the parent asked about special education in May 8th of 2014, Grade 2. Asked again in Grade 3 on January 8th, 2015, at Record on Appeal 1470. And most importantly, I wanted to reference a document, which is at Record on Appeal 2014. So 2014 is a chart. It's something that will help the court understand these various numbers about reading that are throughout the record. So we have numbers that are called DRA numbers and Lexile record numbers and so forth. If one reads the record, such as at 6th grade, the child's reading was at QRI Level 5, Record on Appeal 2085, you can see by looking at Record on Appeal 2014 that that is a 4th grade level. And that is where this child was reading 4th grade, according to the district's own records, in January of 2018. And I see my time has expired. Thank you, Counsel. We have your argument. We appreciate it. Thank you. Thank you. Thank you, Your Honor.